CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
8/16/2024
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
(Roanoke Division)

| | |
|---|---|
| **JADE SAUNDERS** | ) |
| *Plaintiff*, | ) |
| V. | ) Civil Action No. 7:24cv00537 |
| **B2 INVESTMENTS LLC**, | ) **JURY TRIAL DEMANDED** |
| -AND- | ) |
| **JASON BOOTHE,** | ) |
| **SERVE**: R/A: Jason Boothe<br>200 Bowman St.<br>Vinton, VA, 24179 | ) |

## COMPLAINT

Jade Saunders ("Ms. Saunders" or "Plaintiff") by and through undersigned counsel, brings this action against Defendants B2 Investments, LLC ("B2") and Jason Boothe ("Mr. Boothe") under 42 U.S.C. §§ 3601 et seq. ("the Fair Housing Act" or "FHA"), Va. Code Ann. §§ 36-96.1 et seq. ("the Virginia Fair Housing Law" or "VFHL"), and Virginia common law.

**I.  INTRODUCTION**

1. This case involves quid pro quo sexual harassment, battery, and violations of the FHA and VFHL. Plaintiff has evidence that B2, through its agent, sexually harassed and battered Ms. Saunders and discriminated against her on the basis of sex.

**II.  JURISDICTION AND VENUE**

2. This action arises under 42 U.S.C. §§ 3601 et seq., Va. Code Ann. §§ 36.91 et seq., and the common law of Virginia.

3. Venue is proper in this forum pursuant to Va. Code Ann. § 8.01-262(4) because B2 rented a house to Plaintiff in Roanoke, Virginia, Mr. Boothe battered and sexually harassed Plaintiff here, a substantial part of the events or omissions giving rise to the claims occurred here, and B2 has done substantial business here.

### III.  PARTIES

4. Plaintiff is a United States citizen and legal resident of the Commonwealth of Virginia.

5. Ms. Saunders is a 35-year-old female who moved into one of B2's rental properties on October 1, 2023 located at 3 14th Street SW, Roanoke, Virginia 24017.

6. Defendants unlawfully discriminated against and harassed Plaintiff by touching her breasts without permission and requesting sexual favors in exchange for lower rent.

7. B2 Investments, LLC ("B2") is a Virginia Corporation with its headquarters at 200 Bowman St., Vinton, VA, 24179.

8. Jason Boothe is an adult male that both owns and works as an agent for B2.

9. At all relevant times, Mr. Boothe acted as an agent of B2 in the course of his employment.

### IV.  LEGAL FRAMEWORK

**Battery**

10. In Virginia, "[t]he slightest touching of another if done in a rude, insolent, or angry manner constitutes a battery for which the law affords redress." Kelley v. Commonwealth, 69 Va. App. 617, 628 (Va. Ct. App. 2019).

**Sexual Battery**

11. In Virginia, sexual battery occurs when a person sexually abuses another against

their will using force, threat, intimidation, or ruse. Va. Code Ann. § 18.2-67.4.

12. Sexual abuse is defined as "an act committed with the intent to sexually molest, arouse, or gratify any person, where: the accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts…." Va. Code Ann. § 18.2-67.10.

13. Virginia's courts have recognized that both sexual battery and ordinary battery are both criminal and civil causes of action which allow plaintiffs to bring a private suit for damages. See, e.g., Ks v. Puckett, 110 Va. Cir. 236, 238 (Augusta County 2022); N.G. v. Schefer, 72 Va. Cir. 239 (Fauquier County 2006).

14. Under the doctrine of *respondeat superior*, tortious conduct like sexual assault and battery by an employee or agent can establish the employer's liability. Doe v. Baker, 299 Va. 628, 651 (2021); Our Lady of Peace, Inc. v. Morgan, 297 Va. 832 (2019).

**Fair Housing Act**

15. 42 U.S.C. § 3604 establishes that it is illegal to discriminate against any person regarding the terms, conditions, or privileges of the sale or rental of a dwelling based on the sex of that person.

16. Harassment based on sex violates 42 U.S.C. § 3604.  24 CFR § 100.600.

17. The Federal Fair Housing Act splits sexual harassment into two different types that constitute a violation of the Act. See 24 CFR § 100.600.

18. The first type, quid pro quo harassment, refers to "an unwelcome request or demand to engage in conduct where submission to the request or demand, either explicitly or implicitly, is made a condition related to: The sale, rental or availability of a dwelling; the terms, conditions, or privileges of the sale or rental, or the provision of services or facilities in connection therewith; or the availability, terms, or conditions of a residential real estate-related transaction." Id.

19. The second type, hostile environment harassment, refers to "unwelcome conduct that is sufficiently severe or pervasive as to interfere with: The availability, sale, rental, or use or enjoyment of a dwelling; the terms, conditions, or privileges of the sale or rental, or the provision or enjoyment of services or facilities in connection therewith; or the availability, terms, or conditions of a residential real estate-related transaction." Id.

20. The existence of hostile environment harassment depends upon the totality of the circumstances and is based on factors such as: nature of the conduct, the context of the incidents, severity, scope, frequency, duration, location of conduct, and the relationships of the people involved. Id.

21. Neither psychological nor physical harm is required to prove a hostile environment exists. Id.

22. Instead, the unwelcome conduct is measured for severity and pervasiveness based on the perspective of a reasonable person in the aggrieved person's position. Id.

23. For both types of harassment, the conduct can be written, verbal, or in any other form and does not require physical contact. Id.

24. "A single incident of harassment because of … sex … may constitute a discriminatory housing practice, where the incident is sufficiently severe to create a hostile environment or evidences a quid pro quo. Id.

25. Under 42 U.S.C. § 3613, a person who is discriminated against on the basis of sex regarding the terms and conditions of renting a dwelling is entitled to bring civil action against the violator(s).

26. "[I]f the court finds that a discriminatory housing practice has occurred, or is about to occur, the court may award to the plaintiff actual and punitive damages" in addition to attorney

4

fees and costs. Id.

27. Because the duties of the FHA are "nondelegable," property owners are liable for discrimination conducted by their agents. Equal Rights Ctr. v. Niles Bolton Assoc., 602 F.3d 597, 602 (4th Cir. 2010).

**Virginia Fair Housing Law**

28. The Virginia Fair Housing Law ("VFHL") makes it an unlawful discriminatory practice for any person or entity to discriminate against another in the terms and conditions for renting a dwelling on the basis of sex. Va. Code Ann. § 36-96.3.

29. "It shall be an unlawful discriminatory housing practice for any person to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on the account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this chapter." Va. Code Ann. § 36-96.5.

30. An aggrieved person may bring a civil suit against violators of this act. Va. Code Ann. § 36-96.18.

31. "[I]f the court or jury finds that a discriminatory housing practice has occurred or is about to occur, the court or jury may award to the plaintiff, as the prevailing party, compensatory and punitive damages, without limitation otherwise imposed by state law, and the court may award reasonable attorney's fees and costs…." Id.

**Vicarious Liability**

32. "[E]mployers and employees are deemed to be jointly liable and jointly sueable for the employee's wrongful act" under a legal principle called *respondeat superior*. VanBuren v. Grubb, 284 Va. 584, 591 (2012).

5

33. "[U]nder the traditional doctrine of *respondeat superior*, an employer is liable for the tortious act of his employee if the employee was performing his employer's business and acting within the scope of his employment." Parker v. Carilion Clinic, 296 Va. 319, 335 (2018).

34. An employee is acting within the scope of his employment "when the employee committed the tort while performing a normal function of his assigned job." Id. at 336.

35. The employee may be performing a normal function of his assigned job even though the employer "had not authorized the tortious act … which the employee performed wholly out of self-interest." Id. at 337. See also Davis v. Merrill, 133 Va. 69, 74 (1922) (imposing vicarious liability for "malicious assaults" even when an employee acts under "infirmity of temper, or the influence of passion").

V.   **STATEMENT OF FACTS**

36. Ms. Saunders is a 35-year-old female who lived in a rental house owned by B2 Investments, LLC ("B2").

37. Ms. Saunders found the rental house through Defendant Mr. Jason Boothe ("Mr. Boothe"), a former supervisor whom she met while working for Security Force Incorporated.

38. Mr. Boothe, an owner and agent of B2, messaged Ms. Saunders through Facebook, alerting her that he rented out houses through his LLC.

39. Mr. Boothe informed Ms. Saunders in the message that he had a house available and offered to give her a tour of one it.

40. Mr. Boothe also informed Ms. Saunders that he and a man named Scotty co-owned and operated B2 Investments.

41. Ms. Saunders agreed to meet Mr. Boothe to tour the home.

42. Because Ms. Saunders did not own a car, Mr. Boothe offered to pick her up and

take her to the rental house.

43. After showing her the rental house, Mr. Boothe took Ms. Saunders and her son back to the house where she was staying.

44. When he dropped Ms. Saunders off, Mr. Boothe touched her breast as she exited his car.

45. Ms. Saunders was visibly upset by the act but initially gave Mr. Boothe the benefit of the doubt when he stated he was reaching for her seatbelt.

46. Ms. Saunders accepted Mr. Boothe's offer to allow her to move into the rental house because she desperately needed a place to stay.

47. Before moving in, Ms. Saunders told Mr. Boothe she would not be able to pay the full amount of rent listed due to her current financial hardship.

48. Mr. Boothe assured her via text messages and in-person conversations that her inability to pay for the rent at the time of move was acceptable.

49. On October 1, 2023, Ms. Saunders and her son moved into the rental home, located at 3 14th St. SW, Roanoke, Virginia 24017.

50. During October and November 2023, neither Mr. Boothe nor any B2 agent demanded that Ms. Saunders pay her rent immediately.

51. During this time, Ms. Saunders told Mr. Boothe again that she had applied for financial assistance through several organizations to pay the rent.

52. In November 2023, Mr. Boothe messaged Ms. Saunders via Snapchat.

53. In this message, <u>Mr. Boothe offered to reduce Ms. Saunders's rent if she would send him a photo of her breasts</u>.

54. Ms. Saunders was at work when she received the message and did not respond.

55. When she returned home that night, Mr. Boothe called Ms. Saunders and apologized for sending her the vulgar Snapchat message.

56. Ms. Saunders, who was in a desperate financial situation and needed a safe place for her son to live, again forgave Mr. Boothe for his predatory behavior.

57. Upon hearing he was forgiven, Mr. Boothe <u>repeated</u> his request that Ms. Saunders send him photos of her breasts.

58. Ms. Saunders immediately hung up the phone.

59. After this interaction, Ms. Saunders became more uncomfortable and fearful of interacting with Mr. Boothe.

60. Ms. Saunders refused to provide Mr. Boothe with rent payments in person and began sending her rental payments to Mr. Boothe through the mail.

61. Two weeks after Ms. Saunders refused Mr. Boothe's vulgar requests, a notice of eviction was placed on her front door.

62. The eviction notice cited default of rent as the reason for her eviction.

63. When a police officer arrived to enforce the eviction, Ms. Saunders told him about the sexual harassment she had been subjected to by Mr. Boothe.

64. Ms. Saunders also contacted Mr. Boothe to ask why she was being evicted.

65. Mr. Boothe informed Ms. Saunders that he "hadn't filed anything" but suggested to Ms. Saunders that another agent of B2 may have.

66. Prior to receiving the eviction notice, neither Mr. Boothe nor any agent from B2 indicated that there was any issue with her rental payments.

67. Throughout this time, Ms. Saunders feared what Mr. Boothe might do to gain access to her and feared for her family's safety.

68. The court gave Ms. Saunders until April 3 to leave the rental home.

69. On Monday, March 25, 2024, Ms. Saunders texted Mr. Boothe to confront him for having touched her breast and asking her for nude photos of herself.

70. Mr. Boothe did not respond to the text message.

71. On Wednesday, April 3, 2024, Ms. Saunders moved out of the rental home.

72. As she was moving out, Ms. Saunders told the police officer assisting with the eviction that she had been sexually assaulted and informed him that she was uncomfortable being at the rental home alone.

73. Another B2 representative, Scotty, was at the rental home changing the locks.

74. The officer asked Scotty if he was the individual who committed the sexual assault.

75. Scotty informed the police officer that <u>he</u> did not commit the sexual assault.

76. On Monday, April 8, 2024, Jason Boothe's brother, Todd, messaged Ms. Saunders on Facebook, apologizing for the entire incident with his brother.

VI. **CAUSES OF ACTION**

**COUNT I**
**Jason Booth: Battery**

77. Plaintiff realleges and incorporates by reference paragraphs 1-76 as if fully set forth herein.

78. Defendant Mr. Boothe intentionally touched Ms. Saunders's breasts as she exited his vehicle.

79. Defendant Mr. Boothe's intentions were confirmed when he asked Plaintiff to send him nude photos of herself.

80. As a direct and proximate result of Mr. Boothe's conduct, Plaintiff experienced severe mental anguish and fear for her safety.

81. Plaintiff is entitled to recover compensatory damages and up to $350,000 in punitive damages.

## COUNT II
### Jason Booth: Sexual Battery

82. Plaintiff realleges and incorporates by reference paragraphs 1-81 as if fully set forth herein.

83. Mr. Booth intentionally touched the material directly covering Plaintiff's intimate parts.

84. Mr. Booth committed this act with the intent to sexually molest, arouse, or gratify himself.

85. Defendant Mr. Boothe's intentions were confirmed when he asked Plaintiff to send him nude photos of herself.

86. As a direct and proximate result of Mr. Boothe's conduct, Plaintiff experienced severe mental anguish and fear for her safety.

87. Plaintiff is entitled to recover compensatory damages and up to $350,000 in punitive damages.

## COUNT III
### B2: Vicarious Liability

88. Plaintiff realleges and incorporates by reference paragraphs 1-87 as if fully set forth herein.

89. At the time the tortious acts occurred, B2's employee, Jason Boothe, was at all times acting within the scope of his employment. All of the tortious acts were:

　　a.　Committed on B2's property in Roanoke, Virginia during regular business hours;

   b.  Committed while Mr. Boothe was working;

   c.  Committed while Mr. Boothe was performing a responsibility of his job within the scope of his employment; and

   d.  Committed while Mr. Boothe was performing his jobs as a rental agent and a property manager.

90. The battery was proximately caused by the employment relationship between Mr. Boothe, Ms. Saunders, and the company. The close relationship between the tortious act and the employment relationship is demonstrated by the following facts:

   a.  Mr. Boothe allowed Ms. Saunders to rent the property using his capacity as a property manager;

   b.  After letting her move in, Mr. Boothe messaged Ms. Saunders utilizing his power as her property manager to leverage a reduced rent payment in exchange for inappropriate photos;

   c.  After she refused, Mr. Boothe acted in his capacity as property manager and began the eviction process against Ms. Saunders due to default in rent; and

   d.  Defendants instructed a police officer to attend to Ms. Saunders' eviction process in the capacity of their job duties.

91. Mr. Booth's actions grew out of his relationship to Plaintiff as her rental agent and to B2 as its agent assigned to show and lease its property.

92. As a result, B2 is vicariously liable for all damages its agent caused Plaintiff.

COUNT IV
**Defendants violated the Fair Housing Act ("FHA")**
**42  U.S.C. §§ 3601-3619 et seq.**

93. Plaintiff realleges and incorporates by reference paragraphs 1-92 as if fully set forth

11

herein.

94. Defendant Mr. Boothe discriminated against Ms. Saunders on the basis of sex when he offered to change the terms of her rent if she would send him nude photos.

95. In doing this, Defendant Mr. Boothe engaged in both quid pro quo harassment and hostile environment harassment because he made unwelcome requests of a sexual nature that he explicitly related to Plaintiff's rental terms and conditions.

96. The situation became so severe that Plaintiff refused to give Defendant Mr. Boothe her rent in person after the incident and feared the things that he would do to get to her.

97. Because of the above conduct, Defendant violated the Fair Housing Act's anti-discrimination provisions and is liable to the Plaintiff for the violations.

98. Because the Fair Housing Act's provisions are nondelegable, B2 is also liable for the violations.

99. Therefore, both defendants are liable under 42 U.S.C. § 3613 to Plaintiff for actual and punitive damages as well as reasonable attorney's fees according to the court's discretion.

## COUNT IV
### Defendants violated the Virginia Fair Housing Law ("VFHL")
### Va. Code Ann. §§ 36-96.1 et seq.

100. Plaintiff re-alleges and incorporates by reference paragraphs 1-99 as if fully set forth herein.

101. Defendants discriminated against Ms. Saunders on the basis of sex when they offered to change the terms of her rent if she would send Mr. Boothe photos of her breasts.

102. By making requests for these photos, Defendants attempted to coerce and interfere with Plaintiff's enjoyment of the dwelling that she rented.

103. These requests intimidated Plaintiff to the point that she could no longer hand her

rent to Defendant Mr. Boothe in person.

104. The interference is evidenced by the intense fear that Plaintiff had for the life of her and her son in regard to the actions of Defendant Mr. Boothe.

105. Therefore, both defendants are liable to Plaintiff for compensatory and punitive damages, without the limitations otherwise imposed by the law, as well as reasonable attorney's fees and costs according to the court's discretion.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Jade Saunders, prays this Court enter a judgment in her favor providing the following relief:

a. That Defendants pay Plaintiff compensatory damages for all replacement rental expenses, all costs of moving, and other associated costs, in addition to $1,000,000 in emotional distress damages;

d. That Defendants pay Plaintiff's the maximum punitive damages permitted by law (currently $350,000);

e. That Plaintiff be awarded all reasonable attorney fees and costs, pursuant to 42 U.S.C. § 3613 and Va. Code Ann. § 36-96.18;

f. That Plaintiff be awarded post-judgment interest; and

g. That the Court award such other and further relief as is just, equitable, and proper.

**PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

August 16, 2024

                                                          JADE SAUNDERS

                                                          By: _____
                                                                 Christopher E. Collins
                                                                    *Of Counsel*

Christopher E. Collins (VSB No. 90632)
Mia Yugo (VSB No. 92975)
**YUGO COLLINS, PLLC**
25 Franklin Road, SW
Roanoke, Virginia 24011
Tel: (540) 861-1529
Direct: (540) 855-4791
chris@yugocollins.com
mia@yugocollins.com

*Counsel for Plaintiff*